UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JABARI SHABABU RHODES,

              Plaintiff,        Civil Action No. 17-13676
                                            Honorable Judith E. Levy
v.                                           Magistrate Judge David R. Grand

DOES 1-5, 36TH DISTRICT JUDGE
"RONALD GILES," ASSISTANT D.A.,
BAILIFF BROWN, LIEUTENANT
HAMILTON,

              Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S
## APPLICATION TO PROCEED *IN FORMA PAUPERIS* [2]

**and**

## REPORT AND RECOMMENDATION TO DISMISS, *SUA SPONTE*,
## PLAINTIFF'S COMPLAINT UNDER 28 U.S.C. § 1915(e)

Plaintiff Jabari Shababu Rhodes ("Rhodes") commenced this civil rights action under 42 U.S.C. § 1983 on November 13, 2017. (Doc. #1). Rhodes also filed an application to proceed *in forma pauperis* ("IFP"). (Doc. #2). This case has been referred to the undersigned for management, hearing, and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #4). The Court having reviewed Rhodes' IFP application, **IT IS HEREBY ORDERED** that Rhodes' request to proceed without prepayment of fees **(Doc. #2)** is **GRANTED**. *See* 28 U.S.C. § 1915(a); *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262 (6th Cir. 1990). Moreover, the Court having assessed the complaint's sufficiency pursuant to 28 U.S.C. § 1915(e), **IT IS RECOMMENDED** that Rhodes' complaint

be **DISMISSED** *sua sponte*.

**<u>Background</u>**

Rhodes' complaint relates to a pending criminal case that was brought against him in Michigan's 36th District Court. Rhodes begins his complaint by alleging that he was

> [i]ncarcerated for lack of understanding advice of Rights form, [a]nd was deprived of his right to Due Process rights [sic] equal protection of the law by employees of the 36th District Court of Michigan[], in WAYNE COUNTY. The same concerns happens [sic] to be part of an ongoing and systemic deprivation of rights of the members of the public and said county.

(Doc. #1 at ¶ 1). Rhodes goes on to explain the circumstances of a hearing in his criminal case, which he claims give rise to the causes of action he asserts in the instant matter.

First, Rhodes alleges that sometime between August 29, 2017 and October 9, 2017, a criminal complaint and notice to appear were issued against him out of the 36th District Court. (*Id.* at ¶ 15). Rhodes alleges that he presented himself at the appointed day and time (which he does not specify in his complaint) in a "non-combative non-belligerent" manner. (*Id.* at ¶ 16). He alleges that the "Doe 2 assistant DA" [(the "Assistant DA")] handed him an advice of rights form. (*Id.* at ¶ 17). Rhodes then "[a]ttempted to engage [the Assistant DA] in a conversation about the forms . . . [b]ut was intentionally ignored with malice . . . by [her]." (*Id.*) Rhodes alleges that "Doe 3 . . . Deputy Brown [("Deputy Brown")] . . . in an aggressive intimidating persuading tone says she doesn't speak to criminals [a]t which time . . . Rhodes What's [sic] placed under extreme duress [f]rom the inappropriate retort [of] . . . Deputy Brown." (*Id.* at ¶ 18).

Rhodes alleges that the Assistant DA told him he needed to complete the advice of rights form, but that he refused "to contract with the court for lack of understanding." (*Id.* at ¶ 19). The Assistant DA then waved him off and engaged in "some sort of playground Capricious and

2

arbitrary Conversation." (*Id.*). Rhodes' case was called before the Honorable Ronald Giles ("Judge Giles," who Rhodes also refers to as "Doe 1"), and the Assistant DA advised the court that Rhodes had not signed the advice of rights form. (*Id.* at ¶ 20). Rhodes stated that he was not willing to "sign his constitutional rights away," and Judge Giles and the Assistant DA told Rhodes that this was not the purpose of the form. (*Id.*). Rhodes describes their tone as being "very loud" and "intimidating." (*Id.*). Judge Giles then instructed Rhodes to have a seat and proceeded to set a $10,000 bond. (*Id.*). Rhodes attempted to object to the bond but was allegedly told by Judge Giles to "shut up." (*Id.*). Rhodes retorted that his rights under the First and Fourteenth Amendments were being violated. (*Id.*).

Rhodes was apparently unable to post the bond, and Judge Giles ordered him taken into custody. (*Id.* at ¶ 21). Rhodes alleges that Deputy Brown and two other deputies attempted to fingerprint him, but that he refused because he believed this would be a "contract" containing an admission of guilt. (*Id.*). A Lieutenant Hamilton (who Rhodes identifies as "Doe 5") then attempted to get Rhodes to give his fingerprint, but Rhodes again refused. (*Id.* at ¶ 22). Instead, he requested a pen to "fill out a writ of habeas corpus." (*Id.*). A Deputy Peoples (who Rhodes refers to as "Doe 4") gave Rhodes a pen and Rhodes did, in fact, complete a writ of habeas corpus form and provide it to Deputy Peoples to deliver to Judge Giles. (*Id.*).

Rhodes was then taken to the Dickerson Detention Center. (*Id.* at ¶ 23). It is unclear how long Rhodes remained there, but he was released on bond at some point prior to filing his instant complaint on November 13, 2017. As of the filing of his complaint, the underlying 36th District Court charges against him were still pending. (*Id.* at 15). In fact, Rhodes indicated that he was to appear before Judge Giles on November 15, 2017. (*Id.*).

In his instant complaint, Rhodes alleges violations of his Fifth and Fourteenth

3

Amendment rights against Judge Giles, the Assistant DA, Deputy Brown, Deputy Peoples, and Lieutenant Hamilton (collectively, the "Defendants").  He also alleges that the Defendants conspired against him in violation of 42 U.S.C. § 1985(3).  Rhodes seeks compensatory and punitive damages and an injunction to "holt [sic] All systemic Acts of denial of due process against members of the public in the County of Wayne at The District Court . . . ."  (*Id.* at 12).  For the reasons discussed below, even construed liberally, the allegations in Rhodes' complaint fail to state claims for relief and should be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e).

**Analysis**

Once a complaint is filed *in forma pauperis* under 28 U.S.C. § 1915(a), the court must test its sufficiency under § 1915(e).  Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court "shall dismiss" a case at any time if it:  "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  *See also Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (noting that while Congress enacted 28 U.S.C. § 1915 to "ensure that indigent litigants have meaningful access to the federal courts," it also "recognized . . . that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits").  Under these standards, all of the claims asserted in Rhodes' complaint fail as a matter of law and should be dismissed.

    a. **Claims against Judge Giles**

The doctrine of judicial immunity protects judges from suits seeking monetary damages based on judicial acts performed under proper jurisdiction.  *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  The principle of independent judicial decision-making "is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly."

*Christmas v. Macomb Cnty. Circuit Court*, No. 07-10840, 2008 WL 251995, at *6 (E.D. Mich. Jan. 30, 2008) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Judicial immunity attaches so long as the act complained of was a judicial act (*i.e.*, a function normally performed by a judge while dealing with the parties in his judicial capacity) and was not taken in the absence of all jurisdiction. *See Pierson*, 386 U.S. at 553-55; *Stump*, 435 U.S. at 356-62.

The Supreme Court has articulated a two-prong test to determine whether an act is "judicial" in nature. *Stump*, 435 U.S. at 362. The Court must first consider whether the act is one that is "normally performed by a judge," and second, whether the parties dealt with the judge in his or her judicial capacity. *Id.*; *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The Sixth Circuit has explained that acts involving resolution of disputes among parties who have invoked the court's jurisdiction are the touchstone application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).

Here, Rhodes asserts two claims against Judge Giles. In Count I of his complaint, Rhodes alleges that Judge Giles "caus[ed] the initiation of Court proceeding [sic] upon an unlawful criminal complaint . . . [t]here for [sic] violating the clearly established 5th Amendment rights of [Rhodes] against deprivation of Liberty without due process of law." (Doc. #1 at ¶¶ 26-27). In Count II, Rhodes similarly challenges Judge Giles' purported initiation of the criminal case against him as having violated his rights under "the 14th Amendment to the United States Constitution." (*Id.* at ¶ 30). Here, all of Rhodes' allegations against Judge Giles clearly relate to "judicial acts" – that is, ones "normally performed by a judge" which occurred during a legal proceeding where the judge was acting in his "judicial capacity." Accordingly, Judge Giles is entitled to absolute immunity from suit with respect to Rhodes' claims for damages,[1] and Counts

---

[1] Rhodes does not seek injunctive relief against Judge Giles, specifically. In his complaint's

I and II of Rhodes' complaint should be dismissed.

### b. Claims Against the Assistant DA

In Counts III and IV of his complaint, Rhodes alleges that the Assistant DA deprived him of his rights under the Fifth and Fourteenth Amendments by "failing to protect" his "[r]ights to fairness" in legal proceedings and "to be free from deprivation of Liberty without due process of law." (*Id.* at ¶¶ 35, 37, 39). These claims are also subject to dismissal. Like judges, prosecutors enjoy absolute immunity from a civil suit for damages under Section 1983 for actions performed within the scope of their prosecutorial duties. *See Johnson v. Wayne Cnty.*, No. 2:06-13806, 2006 WL 3086938, at *3 (E.D. Mich. Oct. 30, 2006). "The key to analyzing prosecutorial immunity is determining whether the act in question was performed in the prosecutor's role as an advocate for the state." *Id.* (citing *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003)). *See also Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Sam v. Cnty. of Wayne*, No. 2:10-CV-10332, 2010 WL 3026229, at *5 (E.D. Mich. July 29, 2010).

Here, all of Rhodes' allegations against the Assistant DA are related to actions she took in connection with her role prosecuting Rhodes in his criminal case before Judge Giles. Thus,

---

Prayer for Relief, however, Rhodes appears to seek an injunction against either the 36th District Court or Wayne County, neither of whom are named as defendants in this action. In particular, Rhodes requests "an injunction against the defendant to holt [sic] All systemic Acts of denial of due process against members of the public in the County of Wayne at the District Court of Michigan end [sic] Detroit." (Doc. #1 at 12). Even liberally construing this request as seeking injunctive relief against the Defendants, it is essentially a request that this Court exercise superintending control over the 36th District Court's operations. Any such request by Rhodes is frivolous. "Superintending control is an extraordinary power that may be exercised when a petitioner demonstrates both the respondent's failure to perform a clear legal duty and the absence of an adequate legal remedy. If it is determined that a petitioner seeking such an order has an adequate legal remedy by resort to the state appellate process, a complaint for an order of superintending control must be dismissed. *See* M.C.R. 3.302(D)(2)." *Tindall v. Wayne Cnty. Friend of Court, by Joseph A. Schewe*, 269 F.3d 533, 537 (6th Cir. 2001) (internal citation omitted). Here, Rhodes has not alleged that the underlying state charges against him have been resolved in his favor, let alone facts that would suggest injunctive relief is warranted. Accordingly, to the extent Rhodes' complaint seeks such relief, that claim should be dismissed.

the Assistant DA's conduct was "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, and she is entitled to absolute immunity from Rhodes' lawsuit. Accordingly, Rhodes' claims against the Assistant DA should be dismissed.

### c. Conspiracy Claims under 42 U.S.C. § 1985(3)

In Count V of his complaint, Rhodes purports to bring a claim under 42 U.S.C. § 1983(5) against all of the Defendants for conspiring to deprive him of his constitutional rights. This claim also should be dismissed. To succeed on a claim brought pursuant to 42 U.S.C. § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Additionally, the plaintiff must allege that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it.").

As discussed above, Rhodes asserts in his complaint that the Defendants violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution as a result of the way they treated him during a hearing in his pending state court criminal case. However, he makes no allegation that he is a member of a protected class of persons, or that any of the Defendants discriminated against him on account of that status. At most, he alleges a class of persons who "get caught up in Any alleged traffic-related Manor [sic]." (Doc. #1 at ¶ 42).

However, the Court is unaware of any law holding that persons charged with traffic-related offenses are members of a "protected class."

Even if the Court were to construe Rhodes' conspiracy claim as being brought more generally under Section 1983, his claim would fail as a matter of law. The Sixth Circuit has laid out the standard that governs a Section 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011). In addition, the plaintiff must "present facts that the conspirators agreed to commit an act which deprived the plaintiff of a right, privilege or immunity secured by the Constitution or by laws of the United States." *Williams v. Kling*, 849 F. Supp. 1192, 1196 (E.D. Mich. 1994) (quoting *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988)).

In this case, Rhodes fails to meet the above standards. Even assuming Rhodes alleged a violation of his constitutional rights, he pled no *facts* whatsoever to support the existence of a conspiracy between the Defendants, and instead merely made conclusory allegations that such a "conspiracy" or "mechanism" existed. (Doc. #1 at ¶ 42). Accordingly, Rhodes' conspiracy claim against the Defendants should be dismissed.

## Conclusion

For the reasons stated above, **IT IS ORDERED** that Rhodes' IFP application (**Doc. #2**) is **GRANTED**. Furthermore, **IT IS RECOMMENDED** that Rhodes' complaint be **DISMISSED** in its entirety and with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

| Dated: December 20, 2017 | s/David R. Grand |
| Ann Arbor, Michigan | DAVID R. GRAND |
| | United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Order and Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(a) and (b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 20, 2017.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager